1

2

3

4

5                    UNITED STATES DISTRICT COURT

6            FOR THE EASTERN DISTRICT OF CALIFORNIA

7            ─────────────────────────────────

8                          FRESNO DIVISION

9

10   ANTHONY LEROY WALLACE,
                                      NO C-06-01721-VRW
11            Petitioner,
                                      ORDER DENYING PETITION FOR
12        v                           WRIT OF HABEAS CORPUS

13

14   JOHN MARSHALL, Warden,

15            Respondent.

16

17
     ─────────────────────────────
18

19            Petitioner Anthony Leroy Wallace, a state prisoner

20   incarcerated at Folsom State Prison, seeks a writ of habeas corpus

21   pursuant to 28 USC section 2254.  For the reasons set forth below,

22   a writ is DENIED.

23

24                                I

25            On October 15, 2002, after a jury trial in Fresno County

26   superior court, petitioner was found guilty of felony vandalism

27   (count 1), being under the influence of a controlled substance

28   (count 2, a misdemeanor) and resisting arrest (count 3, a

1   misdemeanor).  The jury also found true the allegations that
2   petitioner had suffered two previous "strikes" under California law
3   and had served two prior prison terms.  On April 3, 2003, the trial
4   court sentenced petitioner to twenty-five years to life in state
5   prison, plus two one-year enhancements and time served on the
6   misdemeanor convictions.

7          On October 19, 2004, in a partially published opinion,
8   the California Court of Appeal struck count 3 and modified
9   petitioner's custody credit; in all other respects the judgment was
10  affirmed.  <u>People v Wallace</u>, 123 Cal App 4th 144 (2004).[1]
11  Petitioner's petition for review with the California Supreme Court
12  was denied on January 26, 2005.  Petitioner's state habeas
13  petitions were also denied.

14

15                              II

16         The California Court of Appeal summarized the factual
17  background of this case as follows:

18         One summer evening in Fresno, Anthony LeRoy Wallace's
           wife of two months, Arlissa Pointer Wallace, caught him
19         smoking crack cocaine, called him a crack head, and told
           him to leave the house she had bought six or seven years
20         before the marriage and had refinanced shortly after the
           marriage.[2] Although she had kept the house in her name,
21         Wallace presumably had acquired a small community property
           interest through mortgage payments with community property
22         funds.

23

24
        [1] Because the opinion by the California Court of Appeal was
25  partially unpublished, this court will refer to the lodged
    opinion ("Opinion") throughout this order.  The full opinion was
26  lodged by respondent as Lodged Document 3.

27
        [2] Opinion Footnote 1: For clarity, later references to
28  husband and wife will be to Wallace and Pointer, respectively.

                                2

Instead of leaving, however, Wallace began tearing up the house.  Frightened, Pointer kept her distance from him as she opened the living room curtains in the hope a neighbor might see and call the police.  He kept breaking things.  Twice she dialed 911, but twice she hung up, fearing things would get much worse if he knew she had called.  He left before the police arrived.  She told a police officer that the only thing he had not broken in the house was his own stereo and that everything else in the house belonged to her.  A couple of hours later, alerted by a neighbor to "incredible pounding, very, very loud noise" from the house, police officers found Wallace inside the house breaking things again.  Only after he challenged three armed and uniformed officers to fight, did they subdue him with a taser and arrest him.

At trial, an expert witness testified to over $9,000 of damage to the house and to over $6,000 of damage to the furniture and furnishings.  A jury found Wallace guilty of felony vandalism and of two misdemeanors-being under the influence and resisting, delaying, or obstructing an officer ("resisting")and found two assault with a deadly weapon priors true as both serious felony priors and prison term priors.

Opinion at 2-3.

III

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 USC section 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the [p]etitioner is not challenging his underlying state court conviction."  <u>White v Lambert</u>, 370 F3d 1002, 1009-1010 (9th Cir 2004).  Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 USC § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a

1  decision that was contrary to, or involved an unreasonable

2  application of, clearly established Federal law, as determined by

3  the Supreme Court of the United States; or (2) resulted in a

4  decision that was based on an unreasonable determination of the

5  facts in light of the evidence presented in the State court

6  proceeding."  28 USC § 2254(d).  Under this deferential standard,

7  federal habeas relief will not be granted "simply because [this]

8  court concludes in its independent judgment that the relevant

9  state-court decision applied clearly established federal law

10 erroneously or incorrectly.  Rather, that application must also be

11 unreasonable."  Williams v Taylor, 529 US 362, 411 (2000).

12       While circuit law may provide persuasive authority in

13 determining whether the state court made an unreasonable

14 application of Supreme Court precedent, the only definitive source

15 of clearly established federal law under 28 USC section 2254(d)

16 rests in the holdings (as opposed to the dicta) of the Supreme

17 Court as of the time of the state court decision.  Id at 412; Clark

18 v Murphy, 331 F3d 1062, 1069 (9th Cir 2003).

19       When a federal court is presented with a state court

20 decision that is unaccompanied by a rationale for its conclusions,

21 the court has no basis other than the record "for knowing whether

22 the state court correctly identified the governing legal principle

23 or was extending the principle into a new context."  Delgado v

24 Lewis, 223 F3d 976, 982 (9th Cir 2000).  In such situations,

25 federal courts must conduct an independent review of the record to

26 determine whether the state court decision is objectively

27 unreasonable.  Id.  While federal courts "'are not required to

28 defer to a state court's decision when that court gives [them]

4

nothing to defer to, [they] must still focus primarily on Supreme
Court cases in deciding whether the state court's resolution of the
case constituted an unreasonable application of clearly established
federal law.'"  Greene v Lambert, 288 F3d 1081, 1089 (9th Cir 2002)
(quoting Fisher v Roe, 263 F3d 906, 914 (9th Cir 2001)).
Furthermore, independent review of the record is not de novo review
of the constitutional issue, but rather the only way a federal
court can determine whether a silent state court decision is
objectively unreasonable.  Himes v Thompson, 336 F3d 848, 853 (9th
Cir 2003).  However, if the state court did not reach the merits of
a claim, federal review of the claim is de novo.  Nulph v Cook, 333
F3d 1052, 1057 (9th Cir 2003).

          Even if a petitioner meets the requirements of § 2254(d),
habeas relief is warranted only if the constitutional error at
issue had a substantial and injurious effect or influence in
determining the jury's verdict.  Brecht v Abrahamson, 507 US 619,
638 (1993).  Under this standard, petitioners "may obtain plenary
review of their constitutional claims, but they are not entitled to
habeas relief based on trial error unless they can establish that
it resulted in 'actual prejudice.'"  Brecht, 507 US at 637, citing
United States v Lane, 474 US 438, 439 (1986).


                              IV

          Petitioner seeks federal habeas relief based on 21
claims.[3]   Grounds 1, 4-7, 12, 13, 19, 20 and 21 all allege
ineffective assistance of counsel and will be considered after the

_____

     [3] Although the petition lists 23 grounds for relief, it does
not include a Ground 10 or a Ground 11.

1    remaining claims.  Petitioner's claim for relief based on
2    cumulative error (Ground 3) will be considered last.

3

4                            A: GROUND 2

5           In Ground 2, petitioner maintains that his constitutional
6    rights were violated due to prosecutorial misconduct.  He maintains
7    that: 1) he was tried and convicted on evidence known to be false;
8    2) the prosecutor improperly utilized petitioner's assault with a
9    deadly weapon conviction and; 3) the prosecutor improperly
10   introduced photos of the damage.  The state court denied this claim
11   in a summary opinion.

12          "The appropriate standard of review for [a prosecutorial
13   misconduct claim] on writ of habeas corpus is the narrow one of due
14   process, and not the broad exercise of supervisory power." Darden
15   v Wainwright, 477 US 168, 181 (1986) (citations omitted).  Thus,
16   the court must determine whether the prosecutor's conduct "'so
17   infected the trial with unfairness as to make the resulting
18   conviction a denial of due process.'" Id (citing Donnelly v
19   DeChristoforo, 416 US 637 (1974).  A defendant's due process rights
20   are violated if a prosecutor knowingly relies on perjured testimony
21   and fails to correct it.  Napue v Illinois, 360 US 264, 269 (1959);
22   Morales v Woodford, 388 F3d 1159, 1179 (9th Cir 2004).  Prosecutors
23   are not, however, held accountable for discrepancies in testimony
24   where there is no evidence from which to infer prosecutorial
25   misconduct.  United States v Zuno-Arce, 44 F3d 142, 1423 (9th Cir
26   1995).

27          First, petitioner alleges that the prosecutor committed
28   misconduct by relying on Pointer's testimony.  Petitioner alleges

that he was earlier accused by Pointer of rape and spousal abuse;
these charges were dismissed and petitioner maintains that the
dismissal confirms that Pointer was an unreliable witness.
Petitioner also points to the fact that Pointer's testimony at
trial contradicted her original statements to police about the
vandalism.  After conducting an independent review of the record,
the court finds that the state court's summary dismissal of this
claim was not objectively unreasonable under clearly established
federal law.  See Delgado, 233 F3d at 982.

Pointer did state at trial that she was responsible for
some of the damage in the home.  Reporter's Transcript at 315-317
(hereinafter "RT", submitted by respondent as Lodged Document 2).
In so doing, however, she contradicted her original statements to
Officer Payn and to her neighbor that petitioner was responsible.
RT at 315-40. The record also indicates that, after responding to a
call, testifying Officer Scott Payn observed petitioner throw
something against the wall and tip something over inside the house.
RT at 444.  Officer Payn also observed that the damage to the house
and furniture was far greater than it had been on his visit to the
house two hours earlier.  RT at 447.  Pointer was not there at the
time of the second visit, supporting an inference that petitioner
and not Pointer was largely responsible for the property damage.
RT at 444-45.

In light of the physical evidence and Officer Payn's
testimony, it was reasonable for the prosecutor to believe that
Pointer's original account to police was accurate and that her
recantation at trial was not.  In addition, despite the fact that
earlier charges of rape against petitioner had been dismissed, the

1  corroborating evidence of vandalism made it reasonable for the
2  prosecutor to believe in this particular case that Pointer had
3  originally provided an accurate account of the vandalism to law
4  enforcement.  Based on all of the evidence in the record,
5  petitioner cannot show either that Pointer's testimony was actually
6  false or that the prosecution knew or should have known that it was
7  false.  Zuno-Arce, 339 F3d 886 at 889 (citing Napue, 360 US at 269-
8  271).  Accordingly, petitioner cannot establish that the prosecutor
9  committed misconduct by relying on Pointer's original statements.

10        Second, petitioner argues that the prosecutor committed
11  misconduct when she introduced petitioner's prior conviction for
12  assault with a deadly weapon.  Specifically, petitioner claims that
13  the conviction was admitted "without proving the burden of proof to
14  the jury."  Amended Petition at 24.

15        Petitioner's claim is without merit.  This court's
16  independent review of the record confirms that the trial jury
17  received extensive evidence of petitioner's prior convictions
18  before finding them to be true.  RT at 538-67.  The evidence
19  presented included pictures of the defendant, fingerprints of the
20  defendant, the judgments in questions, paperwork from the counties
21  and courts where petitioner was convicted of the prior charges, and
22  a chronological record of petitioner's movement through the
23  Department of Corrections, including any paroles and subsequent
24  violations.  RT at 541-51.  Petitioner's attorney conducted cross-
25  examination.  RT at 547.  The trial court instructed the jury as to
26  the applicable burden of proof, and specifically stated that the
27  jury was required to "consider each of the alleged prior
28  convictions separately" and that the state had the burden of

proving the truth of the convictions beyond a reasonable doubt.   RT
at 562-63.   Accordingly, the state court's summary dismissal of
this claim was not objectively unreasonable under clearly
established federal law and petitioner's claim must be denied.   See
Delgado, 233 F3d at 982.

Finally, petitioner claims that the prosecutor committed
misconduct by presenting photos of the damage.   This claim is also
without merit.   The photos showed damage to the home, which was
clearly relevant considering the charge against petitioner was
felony vandalism.   As discussed in greater detail infra, in the
court's consideration of petitioner's related claim alleging that
introduction of the photographs deprived him of his right to a fair
trial, admission of the photographs was not unduly prejudicial.
Accordingly, petitioner cannot show that the prosecutor's conduct
in presenting the photos "so infected the trial process with
unfairness as to make the resulting conviction a denial of due
process."   Darden, 477 US at 181.   Because the state court's
dismissal of this claim was not objectively unreasonable under
clearly established federal law, petitioner's claim must be denied.


B: GROUND 8

In Ground 8, petitioner alleges that his due process
rights were violated when the trial court instructed the jury that
the fact that petitioner might have vandalized community property
in which he had an ownership interest was no defense to the charge
of vandalism.   In so doing, petitioner also maintains that the
state court's application of the vandalism statute to his actions
was incorrect.   The California Court of Appeal addressed these

1    issues in a reasoned opinion on direct appeal.

2           To begin with, in a lengthy and detailed discussion, the

3    state court addressed the scope of the vandalism statute, including

4    the main question of "whether a spouse can be guilty of vandalizing

5    community property and the other spouse's separate property inside

6    the marital home."  Opinion at 9.  The court recognized that "[i]n

7    People v Kahanic (1987) 196 Cal App 3d 461 * * *, we held that the

8    vandalism statute applies to community property on the rationale

9    that the "essence of the crime is in the physical acts against the

10   ownership interest of another, even though that ownership is less

11   than exclusive."[4]  Opinion at 4.  After further analysis of the

12   existing statutory and caselaw, the court held that:

13          [W]e broaden our holding in Kahanic to embrace the
            emerging rule imposing criminal liability on a spouse for
14          intentionally causing harm to property in which the other
            spouse has an interest, whether the property is
15          individual or marital, whether the harm occurs outside or
            inside the marital home.  (Kahanic, supra, 196 Cal. App.
16          3d at p 466; see e g, Jackson v United States (DC 2003)
            819 A2d 963, 964-967 ("Jackson") [spouse criminally
17          liable for harm to marital property at marital home under
            statute prohibiting harm to property "not his or her
18          own"]; State v Superior Court (Ariz Cr App 1997) 188 Ariz
            372 [936 P2d 558-559] [spouse criminally liable for harm
19          to joint tenancy property of both spouses under statute
            prohibiting damage to "property of another person"];
20          State v Coria (2002) 146 Wash 2d 631 [48 P3d 980, 981-
            985] ("Coria") [spouse criminally liable for harm to
21          community property to marital property at marital home
            under statute prohibiting damage to "property of
22          another"]; Hughes v State (Alaska Ct App 2002) 56 P3d
            1088, 1094-1095 [spouse criminally liable for harm to
23          marital property at marital home under statute
            prohibiting damage to "property of another']; Ginn v
24          State (2001) 251 Ga App 159 [553 SE 2d 839, 840, 842]

25   _____

26          [4] In Kahanic, the parties had already started dissolution
     proceedings when the wife was convicted of vandalizing the
27   couple's automobile.  196 Cal App 3d 461, 463.  No dissolution
     proceedings were underway when petitioner vandalized the marital
28   home.

1     [spouse criminally liable for harm to marital property at
    marital home under statute prohibiting damage to "any
2     property of another"] * * * .[5]  Accordingly, we answer in
    the affirmative the question before us and hold that a
3     spouse can be guilty of vandalizing community property
    and the other spouse's separate property inside the
4     marital home.

5 Opinion at 6-8.  The Court of Appeal also considered and dismissed

6 as without merit petitioner's arguments that: 1) he could not be

7 guilty of vandalism unless he and his wife were engaging in family

8 law litigation; and 2) the law was unconstitutionally vague.

9 Opinion at 8-9.

10       Petitioner cannot demonstrate that the California Court

11 of Appeal's reasoned decision was contrary to, or involved an

12 unreasonable application of, clearly established United States

13 Supreme Court law.  Nor can he demonstrate that the state court's

14 factual findings were unreasonable.  Petitioner can cite to no

15 clearly established law indicating that the state court decision

16 was in error.

17       In this case, the California Court of Appeal was engaged

18 in an analysis and interpretation of California state law.  A state

19 court's interpretation of state law, including one announced on

20 direct appeal of the challenged conviction, binds a federal court

21 sitting in habeas corpus.  <u>Bradshaw v Richey</u>, 546 US 74, 76 (2005);

22 <u>Hicks v Feiock</u>, 485 US 624, 629 (1988).

23       The state's highest court is the final authority on the

24 law of that state.  <u>Sandstrom v Montana</u>, 442 US 510, 516-17 (1979).

25 Even a determination of state law made by an intermediate appellate

26 _____

27    [5] The California Court of Appeal went on to list numerous
other cases from other jurisdictions confirming that a spouse
28 could be criminally liable for damage to marital property.

1  court must be followed and may not be "'disregarded by a federal

2  court unless it is convinced by other persuasive data that the

3  highest court of the state would decide otherwise.'"   <u>Hicks</u>, 485 US

4  at 630 n 3 (quoting <u>West v American Telephone & Telegraph Co</u>, 311

5  US 223, 237-38 (1940)).   A federal court may, however, re-examine a

6  state court's interpretation of its law if that interpretation

7  appears to be an obvious subterfuge to evade consideration of a

8  federal issue.   <u>Mullaney v Wilbur</u>, 421 US 684, 691 n 11 (1975).

9          Petitioner does not and cannot cite to any evidence

10 either that the California Supreme Court would decide this matter

11 differently or that the California Court of Appeal's decision was a

12 subterfuge to evade consideration of a federal issue.   The

13 California Supreme Court denied petitioner's petition for review

14 from the decision on direct appeal and later denied petitioner's

15 habeas petition.   Had the California Supreme Court wanted to

16 overturn the California Court of Appeal's analysis of the state law

17 at issue, presumably it could have done so, either on direct or

18 collateral review of petitioner's case.   There is also no evidence

19 (nor does petitioner even assert) that the state court was engaged

20 in an obvious subterfuge to avoid consideration of a federal issue.

21 <u>Mullaney</u>, 421 US at 691.   Accordingly, petitioner's claim that the

22 state court interpretation of the vandalism was in error must be

23 denied.[6]

24 _____

25        [6] In support of his Traverse, petitioner submitted a
   Declaration from Carolina Rose.   ("Rose Decl")   According to her
26 declaration, Ms Rose specializes in historical research
   surrounding the adoption and amendment of California statutes.
27 Rose Decl at 3-5.   Ms Rose avers that, according to her research
   and analysis, the vandalism statute was not intended to address
28 damage done to property by someone who had an ownership interest

1     The California Court of Appeal also specifically

2 addressed petitioner's claim of instructional error.

3     Wallace argues the special instruction on vandalism
      prejudiced him.  The Attorney General argues the
4     instruction correctly states the law.  The instruction
      informed the jury:

5
          "No act of vandalism of community property
6         committed by one who has a property interest in
          the property is rendered less criminal by
7         reason of that ownership interest. [¶] In the
          crime charged in Court One, Vandalism, the fact
8         the defendant had or may have had an ownership
          interest in the real or personal property that
9         was destroyed, damaged or defaced is not a
          defense and does not relieve him of
10        responsibility for the crime."

11        First, on the premise only "a civil remedy in
      equity" for "breach of fiduciary duty" lies to redress
12    harm by a spouse to community personal property because
      the law grants each spouse a "like absolute power of
13    disposition" of community personal property "as the
      spouse has of the separate estate of the spouse" * * *,
14    Wallace argues the special instruction improperly
      informed the jury his ownership interest was "no
15    defense."  Implicit in his premise is the shocking notion
      that each spouse has carte blanche to deface, damage, and
16    destroy the community personal property estate, as he or
      she wishes, and that the criminal law offers no remedy to
17    society or the other spouse.  Our holding that a spouse
      can be guilty of vandalizing community property and the
18    other spouse's separate property inside the marital home
      vitiates his premise.  For want of a valid premise, his
19    argument fails.

20        Second, on the premise the loss to each spouse from
      vandalism to community property is only half the total
21    loss, Wallace argues that informing the jury vandalism by
      a spouse to community property is no "less criminal by
22    reason of that ownership interest" could have induced a
      felony verdict for misdemeanor conduct if the total loss
23    were less twice the felony threshold of $400. * * * An
      expert witness testified to over $9,000 of damage to the

24

25 in that property.  Id at 8-9.  Assuming that it is proper for
   this court to consider Ms Rose's Declaration, it does not change
26 the court's analysis.  Interpretation of state law is within the
   purview of the state courts and binding on federal habeas courts,
27 even if Declarant Rose believes the state court's decision was in
28 error.  See Bradshaw, 546 US at 76 (2005).

1   house and over $6,000 of damage to the furniture and
2   furnishings.  Whether by evidence of reasonable cost of
    repair or by inference of diminution in market value, the
3   total loss was easily twice the felony threshold of $400.
    (See <u>People v Yanez</u> (1995) 38 Cal App 4th 1622, 1626-
4   1627; § 594, subd (B)(1).)  On that record, error, if
    any, was harmless.  (<u>People v Watson</u> (1956) 46 Cal. 2d
5   818, 836.)  The record refutes his argument, so his
    premise is moot.

6   Opinion at 9-10.

7          A challenge to a jury instruction solely as an error

8   under state law does not state a claim cognizable in federal habeas

9   corpus proceedings.  See <u>Estelle</u>, 502 US at 71-72.  To obtain

10  federal collateral relief for errors in a jury charge, a petitioner

11  must show that the ailing instruction by itself so infected the

12  entire trial that the resulting conviction violates due process.

13  See id at 72; <u>Cupp v Naughten</u>, 414 US 141, 147 (1973).  "[I]t must

14  be established not merely that the instruction is undesirable,

15  erroneous, or even 'universally condemned,' but that it violated

16  some right which was guaranteed to the defendant by the Fourteenth

17  Amendment."  <u>Donnelly v DeChristoforo</u>, 416 US 637, 643 (1974)

18  (quoting <u>Cupp</u>, 414 US at 146).  The instruction "may not be judged

19  in artificial isolation," but must be considered in the context of

20  the instructions as a whole and the trial record.  <u>See</u> <u>Estelle</u>, 502

21  US at 72 (quoting <u>Cupp</u>, 414 US at 147).  In other words, the

22  district court must evaluate jury instructions in the context of

23  the overall charge to the jury as a component of the entire

24  process.  See <u>United States v Frady</u>, 456 US 152, 169 (1982) (citing

25  <u>Henderson v Kibbe</u>, 431 US 145, 154 (1977)).

26         A determination that there is a reasonable likelihood the

27  jury has applied the challenged instructions in a way that violates

28  the Constitution establishes only that a constitutional error has

1    occurred.  Calderon v Coleman, 525 US 141, 146 (1998).  If

2    constitutional error is found, the court also must determine the

3    error had a substantial and injurious effect or influence in

4    determining the jury's verdict before granting habeas relief.  Id

5    (citing Brecht, 507 US at 637).

6         Here, petitioner does not demonstrate that the state

7    court's decision was an unreasonable application of United States

8    Supreme Court precedent, or an unreasonable determination of the

9    facts.  28 USC § 2254(d).  As the court has already discussed

10   supra, a state court's interpretation of state law, including one

11   announced on direct appeal of the challenged conviction, binds a

12   federal court sitting in habeas corpus.  Bradshaw, 546 US at 76

13   (2005).  Given that the state court's interpretation of the state

14   law at issue regarding ownership interest as a potential defense

15   did not run afoul of any clearly established United States Supreme

16   Court law, petitioner cannot show that the jury instruction stating

17   that law "so infected the entire trial that the resulting

18   conviction violated due process."  Cupp, 414 US 141.  Accordingly,

19   his claim must be denied.

20

21                          C: GROUND 9

22        In Ground 9, petitioner also challenges the California

23   Court of Appeal's interpretation of the vandalism statute.  Here,

24   he maintains that the state court unreasonably expanded the statute

25   at issue, in violation of the Ex Post Facto Clause, the Supremacy

26   Clause and due process.  The California Supreme Court denied this

27   claim, which petitioner raised in his state habeas petition, on the

28   merits in a summary opinion.

The United States Constitution prohibits the federal government and the states from passing any "ex post facto Law." US Const, Art I, § 9, cl 3 (federal government); Art I, § 10, cl 1 (states).  These clauses prohibit the government from enacting laws with certain retroactive effects: any law that (1) makes an act done before the passing of the law, which was innocent when done, criminal; (2) aggravates a crime or makes it greater than it was when it was committed; (3) changes the punishment and inflicts a greater punishment for the crime than the punishment authorized by law when the crime was committed; or (4) alters the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed. Stogner v California, 539 US 607, 611-612 (2003); Carmell v Texas, 529 US 513, 519-538 (2000).  The Ex Post Facto Clauses are designed to prevent manifestly unjust and oppressive retroactive effects.

In applying the ex post facto prohibition of the Federal Constitution to state laws, a federal court accepts the meaning ascribed to them by the highest court of the state.  Murtishaw v Woodford, 255 F3d 926, 964-665 (9th Cir 2001).  But when their meaning is thus established, the issue of whether there has been an ex post facto violation is a constitutional question to be determined by the federal court.  Id at 965.

Even though the Ex Post Facto Clause applies only to the legislative branch of government, there is a due process counterpart which prevents retroactive enlargement of the reach of criminal statutes by judicial interpretation.  Rogers v Tennessee, 532 US 451, 455-456 (2001); Poland v Stewart, 117 F3d 1094, 1099 (9th Cir 1997).  Retroactivity will not be at issue, however, where

1  a state supreme court's interpretation of a statute after the

2  defendant's conviction "merely clarified" the statute as properly

3  interpreted at the time of the conviction.  See <u>Fiore v White</u>, 531

4  US 225, 226 (2001).

5         Due process protects against judicial infringement of the

6  right to fair warning that certain conduct will give rise to

7  criminal penalties.  <u>Webster v Woodford</u>, 369 F3d 1062, 1069 (9th

8  Cir 2004) (discussing <u>Bouie v City of Columbia</u>, 378 US 347 (1964)).

9  A judicial construction will run afoul of <u>Bouie</u> only if it

10  "indefensible by reference to the law which had been expressed

11  prior to the conduct in issue."  <u>Rogers v Tennessee</u>, 532 US 451,

12  457 (2001) (internal quotations omitted). <u>Bouie</u> is not violated

13  unless judicial construction of a criminal statute represents a

14  "radical and unforeseen" departure from former law.  <u>Webster</u>, 369

15  F3d at 1069.

16         The court has conducted an independent review of the

17  record and finds that the state court's summary dismissal of this

18  claim was not objectively unreasonable under clearly established

19  federal law.  See <u>Delgado</u>, 233 F3d at 982.  Prior to petitioner's

20  trial, the California Court of Appeal had already held that the

21  vandalism statute applied to community property "on the rationale

22  that the 'essence of the crime is in the physical acts against the

23  ownership interest of another, even though that ownership is less

24  than exclusive.'" Opinion at 4 (citing <u>Kahanic</u>, 196 Cal App 3d at

25  466).  And as discussed in detail <u>supra</u>, the California Court of

26  Appeal conducted an extensive analysis of the existing law in

27  California and laws from other jurisdictions before deciding to

28  "broaden our holding in <u>Kahanic</u> to embrace the emerging rule

17

1  imposing criminal liability on a spouse for intentionally causing

2  harm to property in which the other spouse has an interest, whether

3  the property is individual or marital, whether the harm occurs

4  outside or inside the marital home."  Opinion at 6.

5       In light of the <u>Kahanic</u> decision and the California Court

6  of Appeal's exhaustive discussion of the applicable authority,

7  petitioner cannot show that the judicial construction of the

8  statute at issue represents a "radical and unforeseen" departure

9  from former law.  <u>Webster</u>, 369 F3d at 1069.  Nor can petitioner

10 show that the state court's decision is "indefensible by reference

11 to the law which had been expressed prior to the conduct in issue."

12 <u>Rogers</u>, 532 US at 457 (2001).  Accordingly, petitioner's claim must

13 be denied.

14

15                          D: GROUND 14

16      In Ground 14, petitioner alleges that the prosecution

17 suppressed evidence favorable to his defense.  Specifically,

18 petitioner maintains that the prosecutor had evidence of Pointer's

19 criminal background, drug addiction, false reports and jail phone

20 call admissions that were not revealed.  Petitioner also alleges

21 that the prosecutor had previously dismissed rape and spousal abuse

22 charges against petitioner because Pointer was not credible.

23 Petition at 49.

24      This claim was presented to the California Supreme Court

25 in petitioner's state habeas petition and was rejected on the

26 merits in a summary denial.  Because the state's rejection of this

27 claim was summary, this court must conduct an independent review of

28 the record and determine whether the state court's decision was

                                 18

1  objectively unreasonable under clearly established United States

2  Supreme Court precedent.  <u>Greene</u>, 288 F3d at 1089.

3         The prosecution has an constitutional obligation to

4  disclose material exculpatory evidence to the defense.  <u>Brady v</u>

5  <u>Maryland</u>, 373 US 83, 87 (1963).  To prove a <u>Brady</u> violation, three

6  elements must be shown.  "The evidence at issue must be favorable

7  to the accused, either because it is exculpatory, or because it is

8  impeaching; that evidence must have been suppressed by the State,

9  either willfully or inadvertently; and prejudice must have ensued."

10 <u>Banks v Dretke</u>, 540 US 668, 691 (2004) (citations omitted).

11        The Ninth Circuit has held, however, that "'where the

12 defendant is aware of the essential facts that enable him to take

13 advantage of any exculpatory evidence, the Government does not

14 commit a <u>Brady</u> violation by not bringing the evidence to the

15 attention of the defense.'"  <u>Raley v Ylst</u>, 470 F3d 792, 804 (9th

16 Cir 2006) (citing <u>United States v Brown</u>, 582 F2d 197, 200 (2d Cir

17 1978)).  Thus, when a petitioner "possesse[s] the salient facts

18 regarding the existence of the records that he claims were

19 withheld", there is no <u>Brady</u> violation.  <u>Raley</u>, 470 F3d at 804

20 (finding that when petitioner knows of the existence of the

21 evidence, his counsel may seek the information via the discovery

22 process); see also <u>United States v Dupuy</u>, 760 F2d 1492, 1502 n 5

23 (9th Cir 1985) (confirming that "[w]here defendants * * * had

24 within their knowledge the information by which they could have

25 ascertained the supposed <u>Brady</u> material, there is no suppression by

26 the government.")

27 \\

28        After an independent review of the record, the court

1    finds that petitioner has not demonstrated that the state court's
2    denial of petitioner's claim was objectively unreasonable.
3    Petitioner is correct that the evidence at issue was favorable to
4    him; at a minimum, it could have been used to further impeach
5    Pointer.  As respondent correctly points out, however, there is
6    nothing to indicate that petitioner was not aware of this evidence;
7    in fact, petitioner does not even argue in his pleadings that he
8    was unaware of this potentially impeaching information about
9    Pointer at the time of his trial.  Petitioner was certainly aware
10   of some of the evidence that he argues ought to have been
11   disclosed; he maintains that Pointer made exculpatory admissions
12   during recorded jailhouse phone calls to him.

13        The Ninth Circuit has concluded that a defendant who
14   claims he was denied exculpatory evidence must show that he would
15   have been unable to obtain comparable evidence by other reasonably
16   available means.  United States v Drake, 543 F3d 1080, 1090 (9th
17   Cir 2008).  Petitioner cannot do so here.  As stated above, he was
18   indisputably aware of the statements Pointer made to him during the
19   jailhouse phone calls.  In addition, petitioner was married to
20   Pointer and they lived together, suggesting that he knew of her
21   alleged criminal background and drug use.

22        Even if petitioner had not been aware of this potentially
23   exculpatory evidence, he would not be able to show a Brady
24   violation because he cannot demonstrate that any prejudice resulted
25   from the alleged withholding of information.  Banks, 540 at 691.
26   Pointer was impeached when she testified at petitioner's trial; in
27   fact, she recanted her earlier statements to police and testified
28   that she was also responsible for the vandalism.  RT at 315-16.

1  Had this further evidence about Pointer's background been

2  introduced, the jury might have found her trial testimony, which

3  was in petitioner's favor, to be even less credible.  Because a

4  habeas petitioner is not entitled to relief based on trial error

5  unless he can establish that the error resulted in actual

6  prejudice, petitioner's claim must be denied.  <u>Brecht</u>, 507 US at

7  637.

8

9                          E: GROUND 15

10          In Ground 15, petitioner alleges that the evidence

11  presented at his trial was insufficient to support his conviction

12  for felony vandalism.  Specifically, he maintains that "there was

13  no evidence to establish the fair market value of any item in

14  question, or the diminution in value caused by" petitioner's

15  vandalism.  Petition at 51.

16          This claim was considered and rejected by the California

17  Court of Appeal in a reasoned opinion on direct appeal.  The court

18  stated:

19          Both by evidence of the reasonable cost of repair
        and by reasonable inference of diminution in market
20      value, a rational jury could find beyond a reasonable
        doubt that Wallace was guilty of felony vandalism because
21      the damage was well over the statutory threshold.  Our
        role in a challenge to the sufficiency of the evidence in
22      a criminal case is limited to a determination whether, on
        the entire record, viewing the evidence in the light most
23      favorable to the prosecution and presuming in support of
        the judgment every fact reasonably inferable from the
24      evidence, a rational trier of fact could find the accused
        guilty beyond a reasonable doubt.  (<u>People v Ochoa</u> (1993)
25      6 Cal 4th 1199, 1206.)  By that standard, the evidence of
        damage is sufficient.

26

27  Opinion at 11.

28          Because due process "protects the accused against

21

conviction except upon proof beyond a reasonable doubt of every

fact necessary to constitute the crime with which he is charged",

In re Winship, 397 US 358, 364 (1970), a state prisoner who alleges

that the evidence in support of his conviction was insufficient

states a constitutional claim which, if proven, entitles him to

federal habeas relief.   Jackson v Virginia, 443 US 307, 321 (1979).

The federal court must determine whether, "'after viewing the

evidence in the light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt.'" Payne v Borg, 982 F2d 225,

338 (9th Cir 1992) (citing Jackson, 443 US at 319).   In order to

prevail on such claims, a petitioner must demonstrate that no

rational trier of face could have proof of doubt beyond a

reasonable doubt.

        Petitioner's claim must fail.   He does not demonstrate

that the state court's dismissal of his insufficiency of the

evidence claim was an unreasonable application of United States

Supreme Court precedent, or an unreasonable determination of the

facts.   28 USC § 2254(d).   The state court's decision, which found

that "a rational trier of fact could find the accused guilty beyond

a reasonable doubt", is in accord with Jackson.   There was evidence

presented at petitioner's trial that it would cost over $9000 to

repair the damage done to the house and that the replacement value

of the damaged furniture and other items was over $6000.   RT at

473-475.   Given that the threshold for felony vandalism under state

law was damage of $400, a "'rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt.'"

Payne, 982 F2d at 338 (citing Jackson, 443 US at 319).

1  Accordingly, this claim must be denied.

2

3                         F: GROUND 16

4       In Ground 16, petitioner argues that the admission of

5  certain photographs violated his right to a fair trial.

6  Specifically, he alleges that photographs of the damaged property

7  were unduly prejudicial because they did not reveal what property

8  might have been damaged by petitioner's wife.  The California

9  Supreme Court denied this claim in an summary opinion.

10      The admission of evidence is not typically subject to

11  federal habeas review unless a specific constitutional guarantee is

12  violated or the error is of such magnitude that the result is a

13  denial of the fundamentally fair trial guaranteed by due process.

14  Estelle, 502 US at 67-68; Henry v Kernan, 197 F3d 1021, 1031 (9th

15  Cir 1999); Colley v Sumner, 784 F2d 984, 990 (9th Cir 1986).  The

16  due process inquiry in federal habeas review is whether the

17  admission of evidence was arbitrary or so prejudicial that it

18  rendered the trial fundamentally unfair.  Walter v Maass, 45 F3d

19  1355, 1357 (9th Cir 1995); Colley, 784 F2d at 990.  Only if there

20  are no permissible inferences that the jury may draw from the

21  evidence can its admission violate due process.  Jammal v Van De

22  Kamp, 926 F2d 918, 919-20 (9th Cir 1991).

23      Petitioner cannot establish that an independent review of

24  the record demonstrates that the state court's decision was

25  objectively unreasonable under clearly established United States

26  Supreme Court law.  Petitioner was charged with felony vandalism,

27  and he cannot deny that the photographs were relevant to show the

28  property damage.  The record indicates that, after responding to a

1    call, testifying Officer Scott Payn observed petitioner throw

2    something against the wall and tip something over inside the house.

3    RT at 444.  Petitioner's wife (Pointer) was not there at the time,

4    supporting an inference that petitioner and not Pointer was largely

5    responsible for the property damage.  RT at 444-45.  In addition,

6    Pointer stated that the photos accurately reflected the damage to

7    the house.  RT at 337.  Thus, it was permissible for the jury to

8    infer that petitioner caused the damage revealed in the

9    photographs.  Jammal, 926 F2d at 919-20.

10         Furthermore, Pointer recanted her earlier statements to

11   police and to her neighbor that petitioner was responsible for the

12   damage, and claimed at trial that she caused some of the damage

13   shown in the photographs (RT at 315-16).  As such, the jury was

14   aware that there was some dispute over whether petitioner caused

15   all of the damage shown in the photographs.  Accordingly, admission

16   of the photographs did not render petitioner's trial fundamentally

17   unfair.

18         Finally, petitioner has failed to establish that any

19   purported state court error had a substantial and injurious effect

20   or influence in determining the jury's verdict.  See Brecht, 507 US

21   at 638.  This claim must be denied.

22

23                         G: GROUND 17

24         In Ground 17, petitioner alleges that he was selectively

25   prosecuted.  Specifically, petitioner maintains that the prosecutor

26   committed constitutional error by prosecuting petitioner and not

27   Pointer, who testified that she had also damaged property.  The

28   California Supreme Court denied this claim, which petitioner raised

1  on state habeas, in a summary opinion.

2      A selective prosecution claim is not a defense on the
3  merits to the criminal charge itself, but an independent assertion
4  that the prosecutor has brought the charge for reasons forbidden by
5  the Constitution.  See United States v Armstrong, 517 US 456, 463
6  (1996).  Although the decision whether to prosecute and what
7  charges to bring generally rests entirely in the prosecutor's
8  discretion, this discretion is subject to constitutional
9  constraints.  See id at 464.  One of these constraints is that the
10 prosecutorial decision may not violate equal protection by resting
11 on "'an unjustifiable standard such as race, religion, or other
12 arbitrary classification.'"  Id (citation omitted).

13     Courts presume that prosecutors have properly discharged
14 their official duties.  See id.  In order to dispel the presumption
15 that a prosecutor has not violated equal protection, a criminal
16 defendant must present "'clear evidence to the contrary.'"  Id
17 (citation omitted).  Unsupported allegations of selective
18 prosecution are not enough.  See United States v Davis, 36 F3d
19 1424, 1433 (9th Cir 1994).

20     A prosecutor's charging decision cannot be judicially
21 reviewed absent a prima facie showing that it rested on an
22 impermissible basis, such as gender, race or denial of a
23 constitutional right.  See United States v Diaz, 961 F2d 1417, 1420
24 (9th Cir 1992).  To establish a prima facie case of selective
25 prosecution, the claimant must show that the prosecutorial policy
26 (1) had a discriminatory effect and (2) was motivated by a
27 discriminatory purpose.  See Armstrong, 517 US at 465.

28     After conducting an independent review of the record, the

25

court concludes that the state court's decision was not objectively
unreasonable under clearly established federal law.  Petitioner
argues that the prosecutor's decision to prosecute him and not
Pointer was improper.  He cannot, however, present clear evidence
to rebut the strong presumption that the prosecutor's charging
decision was within the constitutional parameters of prosecutorial
discretion.  <u>Armstrong</u>, 517 US at 463-64.  Petitioner does not
allege that the prosecutor charged him (petitioner) based on an
arbitrary classification such as race or religion and he cites no
cases in support of his allegation that the non-prosecution of an
alleged accomplice constitutes selective prosecution; thus he fails
to make the required prima facie case of selective prosecution.  Id
at 465.

    Moreover, even though petitioner has not established a
prima facie case of selective prosecution, the court notes that
there were sound reasons for the prosecutor to elect to prosecute
petitioner and not Pointer.  The record indicates that, after
responding to a call, testifying Officer Scott Payn observed
petitioner throw something against the wall and tip something over
inside the house.  RT at 444.  Pointer was not there at the time,
supporting an inference that petitioner and not Pointer was largely
responsible for the property damage.  RT at 444-45.  In addition,
while Pointer claimed she was responsible for part of the damage
during her testimony, in so doing she recanted her original
statements to Officer Payn and to her neighbor that petitioner was
responsible.  RT at 315-40.  Under those circumstances, it was well
within the realm of permissible prosecutorial discretion for the
prosecutor to prosecute petitioner and not Pointer.  Petitioner's

1  claim must be denied.

2

3                          H: GROUND 18

4        In Ground 18, petitioner alleges that he was denied the

5  right to testify on his own behalf at trial.  The California

6  Supreme Court denied this claim, which petitioner raised on state

7  habeas, in a summary opinion.

8        The right to testify on one's behalf at a criminal trial

9  is protected by the United States Constitution.  Rock v Arkansas,

10  483 US 44, 51-52 (1987).  It is a personal right that may be

11  relinquished by the defendant.  United States v Joelson, 7 F3d 174,

12  177 (9th Cir 1993).  Although the ultimate decision whether to

13  testify rests with the defendant, he is presumed to assent to his

14  attorney's tactical decision not to have him testify.  Joelson, 7

15  F3d at 177; United States v Edwards, 897 F2d 445, 446-47 (9th Cir

16  1990).  The trial court has no duty to advise the defendant of his

17  right to testify, nor is the court required to ensure that an on-

18  the-record waiver has occurred.  See id at 446.  Thus, waiver of

19  the right may be inferred from the defendant's conduct and is

20  presumed from the defendant's failure to testify or notify the

21  court of his desire to do so.  Joelson, 7 F3d at 177; Edwards, 897

22  F2d at 446.  A defendant who wants to reject his attorney's advice

23  and take the stand may do so by insisting on testifying, speaking

24  to the court or discharging his lawyer.  Joelson, 7 F3d at 177.  A

25  defendant waives the right to testify if he remains silent in the

26  face of his attorney's decision not to call him as a witness.

27  United States v Pino-Noriega, 189 F3d 1089, 1094-1095 (9th Cir

28  1999); United States v Nohara, 3 F3d 1239, 1244 (9th Cir 1993).

1        After conducting an independent review of the record, the

2   court concludes that the state court's decision was not objectively

3   unreasonably under clearly established federal law.  Petitioner

4   argues that during a confidential <u>Marsden</u>[7] hearing with the trial

5   court on October 9, 2002, he complained of a conflict of interest

6   with his trial counsel because his trial counsel would not allow

7   him to testify.  Petition at 57.  Petitioner's <u>Marsden</u> motion was

8   denied.  The transcript of that confidential hearing was not made

9   available to respondent and has not been lodged with this court by

10  either petitioner or respondent.

11       Petitioner does not provide any evidence in support of

12  his claim that both his trial attorney and the trial judge

13  prevented him from testifying.  While petitioner now claims that he

14  maintained in a closed hearing that he wanted to testify and that

15  his attorney would not allow him to do so, he can point to no

16  record evidence that his attorney and the trial court denied him

17  his constitutional right to testify.  In light of a silent record,

18  this court may not assume: 1) that petitioner's trial attorney

19  refused to allow him to testify; 2) that petitioner made an

20  unambiguous claim at the confidential <u>Marsden</u> hearing that his

21  attorney affirmatively prevented him from testifying; and 3) that

22  the trial judge, in light of the evident constitutional

23  implications, would have denied the motion for new counsel or

24  denied petitioner the opportunity to testify on the record.

25

26  _____

       [7] Pursuant to <u>People v Marsden</u>, 2 Cal 3d 118 (1970),
27  California criminal defendants who move to have new counsel
    appointed must be accorded a hearing on this issue before the
28  trial judge.

1     The applicable law confirms that a trial court has no
2  duty to advise the defendant of his right to testify, nor is the
3  court required to ensure that an on-the-record waiver has occurred.
4  Edwards, 897 F2d at 446.  In addition, a defendant is presumed to
5  assent to counsel's advise not to testify.  See Joelson, 7 F3d at
6  177.  Finally, petitioner has failed to establish that any
7  purported state court error had a substantial and injurious effect
8  or influence in determining the jury's verdict.  Brecht, 507 US at
9  638.  A defendant who testifies on his own behalf waives his
10  privilege against self-incrimination with respect to the relevant
11  matters covered by his direct testimony and subjects himself to
12  cross-examination and impeachment by the government.  Brown v
13  United States, 356 US 148, 154-55 (1958); United States v Hearst,
14  563 F3d 1331, 1338 (9th Cir 1977).  Given that petitioner would
15  have opened himself to arguably damaging impeachment by testifying,
16  he cannot show that his potential testimony was likely to have
17  changed the jury's verdict.  Accordingly, petitioner's claim must
18  be denied.

19

20                          I: GROUND 22

21     In Ground 22, petitioner maintains that his Fourth
22  Amendment rights were violated.  Specifically, petitioner alleges
23  that law enforcement illegally entered and searched his home.
24  Petition at 67.

25     Petitioner's claim is not cognizable.  Stone v Powell,
26  428 US 465, 481-82, 494 (1976), bars federal habeas review of
27  Fourth Amendment claims unless the state did not provide an
28  opportunity for full and fair litigation of those claims.  The

1  existence of a state procedure allowing an opportunity for full and
2  fair litigation of Fourth Amendment claims, rather than a
3  petitioner's actual use of those procedures, bars federal habeas
4  consideration of those claims.  See Gordon v Duran, 895 F2d 610,
5  613-614 (9th Cir 1990) (whether or not defendant litigated 4th
6  Amendment claim in state court is irrelevant if he had opportunity
7  to do so under California law).  California state procedure
8  provides an opportunity for full litigation of any Fourth Amendment
9  claim.  See id  Accordingly, petitioner's claim is denied.

10

11                          J: GROUND 23

12         In Ground 23, petitioner argues that his sentence for
13  felony vandalism (twenty-seven years to life) constitutes cruel and
14  unusual punishment in violation of the Eighth Amendment.  The
15  California Court of Appeal rejected this claim in a reasoned
16  opinion on direct appeal.

17         Petitioner's sentence was attributable to his two prior
18  "strikes" for assault with a deadly weapon, which the jury found
19  true as both serious felony priors and prison term priors.  Before
20  addressing petitioner's Eighth Amendment claim, the California
21  Court of Appeal noted the seriousness of petitioner's prior
22  strikes.

23         Both strike priors were for assault with a deadly
       weapon. * * * In one, he wrapped a towel around his
24     common-law wife's neck, stabbed her six times in the
       throat, and caused wounds that, though arguably
25     superficial, nonetheless could have induced the
       meningitis that led to "brain damage and a coma" and
26     ultimately to her death.  In the other, after his
       shoulder was nicked by a piece of broken window glass a
27     man kicked at him, he threw a metal pole at the man,
       striking him in the forehead above the eye and causing a
28     wound that required 50 stitches to close.  He was still

1    on parole for that offense at the time of the vandalism.
    * * * As the court stated in declining to strike his
2    strike priors, "It's basically nonstop."

3 Opinion at 23-24.

4     The state court then turned to petitioner's claim of

5 cruel and unusual punishment.

6     In determining whether punishment is
    constitutionally excessive, the courts examine the nature
7    of the offense and offender, the penalty the same
    jurisdiction imposes for other offenses, and the
8    punishment other jurisdictions impose for the same
    offense. [citations omitted] A punishment that involves
9    "unnecessary and wanton infliction of pain" or that is
    "grossly out of proportion to the severity of the crime"
10    violates the Eighth Amendment.  (Gregg v Georgia (1976)
    427 US 153, 173.)  A punishment "so disproportionate to
11    the crime for which it is inflicted that it shocks the
    conscience and offends fundamental notions of human
12    dignity" violates * * * the California Constitution.
    * * *

13
     Wallace's punishment with a 27-to-life sentence is
14    neither. * * * [I]n addition to his two assault with a
    deadly weapon strike priors, he has a 16-year history of
15    offenses, including yet another assault with a deadly
    weapon, a willful infliction of corporal injury, a
16    receiving stolen property, and a felony failure to
    appear.  His record shows, as the court noted,
17    "[c]onstant violations of parole, sent back time and time
    again."  Just the year before the vandalism here, he had
18    a domestic disturbance that ended in a trespass
    conviction and another violation of parole.

19
     California statutes imposing harsher punishments on
20    recidivists have long withstood constitutional challenge.
    * * *  The primary goals of a recidivist statute "are to
21    deter repeat offenders and, at some point in the life of
    one who repeatedly commits criminal offenses serious
22    enough to be punished as felonies, to segregate that
    person from the rest of society for an extended period of
23    time."  (Rummel v Estelle (1980) 445 US 263, 284-285.)
    Defining that point in one's life and setting that time
24    are both "matters largely within the discretion of the
    punishing jurisdiction."  (Id at p 285.)

25
     Since recidivism and multiplicity of offenses pose a
26    manifest danger to society, Wallace's harsh punishment
    neither shocks the conscience nor offends fundamental
27    notions of human dignity. * * * In short, Wallace's
    sentence constitutes neither cruel or unusual punishment
28    under the federal Constitution or cruel and unusual

1  punishment under the state Constitution. (US Const, 8th
   Amend.; Cal Const, art I § 17; see <u>Ewing v California</u>
2  (2003) 538 US 11; <u>Lockyer v Andrade</u> (2003) 538 US 63;
   <u>People v Martinez</u>, supra, 71 Cal App 4th at pp 1516-
3  1517.)

4  Opinion at 24-25.

5       Petitioner cannot demonstrate that the California Court

6  of Appeal's reasoned decision was contrary to, or involved an

7  unreasonable application of, clearly established United States

8  Supreme Court law.  Nor can he demonstrate that the state court's

9  factual findings were unreasonable.  Petitioner can cite to no

10 clearly established law indicating that the state court decision

11 was in error.

12      Rather, the state court's reasoning is in accord with the

13 applicable law.  Neither the Supreme Court nor the Ninth Circuit

14 has held that California's three-strikes laws violate the Eighth

15 Amendment, and the Supreme Court has upheld sentences in habeas

16 cases involving three strikes sentences.  <u>Lockyer v Andrade</u>, 538 US

17 63, 68 (2003); <u>Ewing v California</u>, 538 US 11, 19-20 (2003).

18 Indeed, in <u>Andrade</u>, the Supreme Court upheld the sentence of a

19 California petitioner who was convicted on two counts of petty

20 theft and sentenced to life in prison under the three strikes law,

21 concluding it was not one of the "exceedingly rare" and "extreme"

22 punishments that violates the Eighth Amendment.  538 US at 73.

23      While the Eighth Amendment forbids sentences that are

24 grossly disproportionate to the crime, a criminal defendant's

25 history of recidivism is an important factor of the proportionality

26 equation.  <u>Ewing</u>, 538 US at 29 (confirming importance of a

27 petitioner's "long history of felony recidivism" in an Eighth

28 Amendment analysis).  "[T]he presence of violence on a petitioner's

record seems an extremely important focal point for proportionality review." <u>Taylor v Lewis</u>, 460 F3d 1093, 1100 (9th Cir 2006).

In this case, given the applicable law, petitioner's record and the violent nature of his prior strikes, the state court's conclusion that "Wallace's harsh punishment neither shocks the conscience nor offends fundamental notions of human dignity" was not unreasonable. Accordingly, petitioner can show no Eighth Amendment violation and his claim must be denied.


### K: INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

In Grounds 1, 4, 5, 6, 7, 12, 13, 19, and 21, petitioner maintains he was denied effective assistance of trial counsel in violation of the Sixth Amendment. In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i e, that it fell below an "objective standard of reasonableness" under prevailing professional norms. <u>Strickland v Washington</u>, 466 US 668, 687-88 (1984). This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. See id at 687. The relevant inquiry is not what defense counsel could have done, but rather whether the choices defense counsel made were reasonable. <u>See</u> <u>Babbitt v Calderon</u>, 151 F3d 1170, 1173 (9th Cir 1998). Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. <u>Strickland</u>, 466 US at 688; <u>Sanders v Ratelle</u>, 21 F3rd 1446, 1456 (9th Cir 1994). It is unnecessary for

1    a federal court considering a habeas ineffective assistance claim

2    to address the prejudice prong of the Strickland test if petitioner

3    cannot establish incompetence under the first prong.   Siripongs v

4    Calderon, 1333 F3d 732, 737 (9th Cir 1998).

5         Second, the petitioner must show that counsel's errors

6    were so serious as to deprive the defendant of a fair trial, a

7    trial whose result is reliable.  See Strickland, 466 US at 688.

8    The test for prejudice is not outcome-determinative; thus, the

9    petitioner need not show that the deficient conduct more likely

10   than not altered the outcome of the case.  However, a simple

11   showing that the defense was impaired also is not sufficient.  See

12   id at 693.  The defendant must show that there is a reasonable

13   probability that, but for counsel's unprofessional errors, the

14   result of the proceeding would have been different.  A reasonable

15   probability is a probability sufficient to undermine confidence in

16   the outcome.  See id at 694.

17        A defendant can make out a claim of ineffective

18   assistance of counsel only by pointing to specific errors made by

19   trial counsel.  See United States v Cronic, 466 US 648, 646 (1984);

20   Ortiz v Stewart, 149 F3d 923, 933 (9th Cir 1998) (inexperience

21   alone does not establish ineffectiveness); Smith v Ylst, 826 F2d

22   872, 875 (9th Cir 1987); United States v Mouzin, 785 F2d 682, 696-

23   700 (9th Cir 1986) (disbarment without more does not render

24   services of counsel ineffective).  Counsel's conduct must be

25   evaluated for purposes of the performance standard of Strickland

26   "as of the time of counsel's conduct."  Lowry v Lewis, 21 F3d 344,

27   346 (9th Cir 1994) (citations omitted).

28        A difference of opinion as to trial tactics does not

constitute denial of effective assistance, <u>United States v Mayo</u>,

646 F2d 369, 375 (9th Cir 1981), and tactical decisions are not

ineffective assistance simply because in retrospect better tactics

are known to have been available.  <u>Bashor v Risley</u>, 730 F2d 1228,

1241 (9th Cir 1984); <u>United States v Ferreira-Alameda</u>, 815 F2d 1251

(9th Cir 1987).  Tactical decisions of trial counsel deserve

deference when: (1) counsel in fact bases trial conduct on

strategic considerations; (2) counsel makes an informed decision

based upon investigation; and (3) the decision appears reasonable

under the circumstances.  <u>Sanders</u>, 21 F3d at 1456.

Petitioner has the burden of showing that counsel's

performance was deficient.  <u>Toomey v Bunnell</u>, 898 F2d 741, 743

(9th Cir 1990).  Similarly, he must "affirmatively prove

prejudice."  <u>Strickland</u>, 466 US at 693.  Conclusory allegations

that counsel was ineffective do not warrant relief.  <u>Jones v

Gomez</u>, 66 F3d 199, 205 (9th Cir 1995).


1:  GROUND 1 (<u>Kahanic</u> Instructions)

In Ground 1, petitioner maintains that his attorney's

conduct was constitutionally ineffective when she failed to object

to the prosecution's proposed instruction based on <u>People v

Kahanic</u>, 196 Cal App 3d 461.  The state court denied this claim in

a summary opinion.

Even if petitioner were able to show that his counsel's

lack of objection was deficient performance, he would not be able

to demonstrate prejudice.  As discussed in detail <u>supra</u>, with

regards to Grounds 8 and 9, the California Court of Appeal found

<u>Kahanic</u> to be applicable law in petitioner's case.  Opinion at 4-8.

1  Accordingly, there is no reasonable probability that, had

2  petitioner's counsel objected to the instruction, the result of his

3  trial would have been different.  <u>Strickland</u>, 466 US at 693-694.

4  Petitioner's claim must be denied.

5

6                   **2: GROUNDS 4 and 5[8]**

7       In Grounds 4 and 5, petitioner maintains that his counsel

8  was constitutionally ineffective when she failed to object to the

9  testimony of an expert that petitioner claims was unqualified.  The

10 expert in question was a licensed contractor who testified as to

11 damages.  The California Court of Appeal addressed this issue in a

12 reasoned opinion on direct appeal.

13       Wallace argues his attorney's failure to object to
         qualification of the licensed contractor as an expert and
14       to his expert testimony on damages as "inexpert,"
         "irrelevant," and "wrong" constitutes ineffective
15       assistance of counsel.  Specifically, he argues the "only
         qualification" of the expert was that of a "'general
16       contractor in the building industry.'" To the contrary,
         the record shows the expert performed "appraisals or
17       estimates for insurance purposes," all on the basis of
         "industry standards for insurance work and insurance
18       repair," some on the basis of photographs alone, as a
         routine part of his business.  On the authority of case
19       law holding that the measure of damages for <u>theft</u> is fair
         market value, he argues the expert's testimony about a
20       different measure of damages for <u>vandalism</u> was
         irrelevant.  (See <u>People v Simpson</u> (1938) 26 Cal App 2d
21       223.)  Property damaged by vandalism is often repairable,
         but property lost to theft is not, so positing fair
22       market value as the only measure of damages for the home
         is nonsensical.  Instead, as the expert testified here,
23       positing "construction, such as finished carpentry,
         painting, [and] drywall repair," as the measure of
24       damages for the home is reasonable.  A witness can
         testify as an expert if special knowledge, skill,
25       experience, training, or education qualifies him or her

26  _____

27       [8] Petitioner's ineffective assistance of counsel claims
     contain multiple subclaims and overlapping allegations.  The
28   court has grouped them where it is more efficient to do so.

1    as an expert on the subject.  (Evid Code, § 720, subds
     (a), (b).)  Expert testimony is admissible if the subject
2    is sufficiently beyond common experience to assist the
     trier of fact.  (See Evid Code, § 801, subds (a), (b).)
3    Here, as qualification of the expert and admission of his
     testimony are within the court's "considerable latitude,"
4    there is no showing of the "'manifest abuse of
     discretion'" necessary to disturb the court's ruling on
5    appeal.  (<u>People v Davenport</u> (1995) 11 Cal 4th 1171,
     1207). * * * On that record, Wallace fails to meet his
6    burden of showing his attorney's performance "fell below
     an objective standard or reasonableness" and prejudiced
7    his defense.  (<u>Strickland v Washington</u> (1984) 466 US 668,
     687, 688; <u>People v Ledesma</u> (1987) 43 Cal 3d 171, 216-
8    217.)

9  Opinion at 19-20.

10         Petitioner cannot demonstrate that the California Court

11  of Appeal's reasoned decision was contrary to, or involved an

12  unreasonable application of, clearly established United States

13  Supreme Court law.  Nor can he demonstrate that the state court's

14  factual findings were unreasonable.  Petitioner can cite to no

15  clearly established federal law indicating that the state court

16  decision was in error.

17         As the state court confirmed, the damages expert was

18  qualified to testify under the applicable law.  Thus, petitioner's

19  attorney had no reasonable grounds to object to his testimony.

20  Even had she objected, her objection was likely to have been

21  overruled.  Because there is no reasonable probability that, had

22  petitioner's counsel objected to the expert, the result of

23  petitioner's trial would have been different, <u>Strickland</u>, 466 US at

24  693-94, petitioner's claim must be denied.

25  \\

26  \\

27  \\

28                  3: GROUNDS 4 and 6 (Knock-Notice Rule)

1    In Grounds 4 and 6, petitioner maintains that his counsel

2  was ineffective because the arresting officers did not comply with

3  the knock-notice rule, and his attorney did not seek to suppress

4  any evidence on that ground.  The Court of Appeal addressed this

5  claim in a reasoned argument on direct appeal.

6        [O]n a record of no evidence of compliance with the
         knock-notice rule and in reliance on Duke v Superior
7        Court (1969) 1 Cal 3d 314, [Wallace] argues that his
         attorney's failure to suppress evidence constitutes
8        ineffective assistance of counsel.  Duke is inapposite
         since the officers in that case "did not comply with the
9        requirements of section 844 and did not possess any
         excuse for failing to comply with that section." * * *
10       Here, since compliance with the knock-notice rule would
         have increased the officers' peril, the statute excused
11       them from compliance.  On that record, a motion to
         suppress evidence on the basis of non-compliance would
12       have been futile.  As the law neither does nor requires
         idle acts, so an attorney has no duty to make a futile
13       request.

14 Opinion at 19.

15       Petitioner cannot demonstrate that the California Court

16 of Appeal's reasoned decision was contrary to, or involved an

17 unreasonable application of, clearly established United States

18 Supreme Court law.  Nor can he demonstrate that the state court's

19 factual findings were unreasonable.  Petitioner can cite to no

20 clearly established federal law indicating that the state court

21 decision was in error.

22       Strickland and its progeny do not require that trial

23 counsel make futile motions, and thus, the decision of petitioner's

24 counsel not to file a motion to suppress was reasonable under the

25 circumstances.  See Sanders, 21 F3rd at 1456 (9th Cir 1994).

26 Furthermore, petitioner cannot demonstrate that he suffered any

27 prejudice due to his counsel's failure to file a motion to

28 suppress.  Given that it would have been futile for petitioner's

1  counsel to bring a suppression motion, there is no reasonable

2  probability that, had the motion been brought, the result of the

3  proceeding would have different.  Strickland, 466 US at 693-94.

4  Accordingly, petitioner's claim must be denied.

5

6                    4: GROUND 4 (Irrelevant Evidence)

7           In Ground 4, petitioner also maintains that his counsel

8  was ineffective when she did not object to evidence of the new

9  replacement value of vandalized items.  According to petitioner,

10 this evidence was irrelevant because damage to used property was at

11 issue.  Petition at 30.  The California Court of Appeal dismissed

12 this subclaim in a reasoned opinion on direct appeal.

13          On the authority of caselaw holding that the measure
           of damages for theft is fair market value, [petitioner]
14         argues that the expert's testimony about a different
           measure of damages for vandalism was irrelevant. * * *
15         Property damaged by vandalism is often repairable, but
           property lost to theft often is not, so positing fair
16         market value as the only measure of damages for the home
           is nonsensical.

17

18 Opinion at 19.

19          Petitioner cannot demonstrate that the California Court

20 of Appeal's reasoned decision was contrary to, or involved an

21 unreasonable application of, clearly established United States

22 Supreme Court law.  Nor can he demonstrate that the state court's

23 factual findings were unreasonable.  The state court determined

24 that the evidence was relevant; as such, petitioner's counsel had

25 no grounds for objecting to it as irrelevant.  Furthermore,

26 petitioner cannot demonstrate that he suffered any prejudice due to

27 his counsel's failure to object to the evidence on relevancy

28 grounds.  Given that the evidence was relevant, there is no

1    reasonable probability that, had counsel objected, the result of

2    the proceeding would have different.   See Strickland, 466 US at

3    693-94.   Accordingly, petitioner's claim must be denied.

4

5                5: GROUNDS 4 and 7 (Attorney Advisement)

6           In Grounds 4 and 7, petitioner claims that his attorney

7    did not properly advise him on the monetary threshold for felony

8    vandalism, causing him to reject a favorable plea bargain from the

9    prosecution.   According to petitioner, his attorney's conduct was

10   ineffective assistance.   This claim was partially addressed in a

11   reasoned opinion on direct appeal as follows.

12          Wallace argues that his attorney's failure to advise
          him of the $400 threshold for felony vandalism
13        constitutes ineffective assistance of counsel.  A copy of
          CALJIC 16.320 with a handwritten note – "This is my hope"
14        – is in the confidential probation officer's file, but
          nothing identifies the author of the note.  (CALJIC No.
15        16.320 (6th ed 1996) pp 486-487.)   The instruction
          incorrectly states vandalism is a misdemeanor if the
16        amount of defacement, damage, or destruction is "over
          $400" (CALJIC No 16.320 * * * italics added), and the Use
17        Note differently, but equally incorrectly, states "[o]nly
          injury or destruction less than $5000 is a misdemeanor"
18        (* * * italics added), but the statute states vandalism
          is a misdemeanor if the amount of defacement, damage, or
19        destruction is less than $400 (§ 594, subd (B)(2)(A),
          italics added).   Together, the instruction and the Use
20        Note contradict the statute, defy common sense, and
          confirm the adage: A camel is a horse designed by a
21        committee.

22          The CALJIC Committee's calamitous misadventure with
          CALJIC No 16.320 raises questions here about who knew
23        what when.   At the hearing on his new trial motion,
          Wallace testified he asked his attorney why she was not
24        "trying [to] debate this estimate under [$]5,000" if
          "under $5,000 can be designated constituted [sic] as a
25        misdemeanor."   He testified that she gave him an
          instruction showing he was "only going to face a
26        misdemeanor" and that he asked, "Why would I accept six
          years if this was a misdemeanor[?}" He testified, "I was
27        just totally mislead [sic] by the jury instruction and
          the notion that this is how the law is supposed to work."
28        His attorney testified that she had never given him a

1    copy of CALJIC No 16.320 and never advised him to reject
     his six-year offer.

2
         In declarations on the motion, Wallace and his
3    attorney both state she told him the court was going to
     instruct with CALJIC No 16.320.  He stated he would have
4    taken a plea bargain if he had known the jury was not
     going to receive that instruction.  He stated she told
5    him the jury was required to return a misdemeanor
     verdict.  She testified she never told him that.  She
6    stated in her declaration that she gave him "the attached
     copy of said jury instruction," but no instruction was
7    attached.  At the hearing, the court marked as CALJIC No
     16.320 an instruction she testified was a product of his
8    research, not hers, but the instruction never went into
     evidence and is not in the record, which sheds no light
9    on whether the instruction is the same as, or different
     from, the one with the handwritten note in the
10   confidential probation officer's file.

11       On a record so confusing, incomplete, and
     inconsistent, Wallace fails to show ineffective
12   assistance of counsel on appeal. * * * An ineffective
     assistance of counsel argument often is more appropriate
13   on habeas corpus than on appeal.  (See People v Mendoza
     Tello (1997) 15 Cal 4th 264, 266-267.)  As that is so
14   here, we reject his argument but intimate no opinion on
     the merits.

15

16   Opinion at 21-22.

17       On his initial habeas corpus review, petitioner's claim

18   of ineffective assistance of counsel was addressed by the Fresno

19   County superior court as follows.

20       Petitioner contends that the judgment in the
     underlying case was the result of ineffective assistance
21   of counsel and prosecution misconduct.  He further
     asserts that these issues could not be resolved on appeal
22   because they involve matters outside the court record.
     The Opinion issued by the Fifth Appellate District on
23   October 19, when it affirmed the modified judgment in
     this case, noted that ineffective assistance of counsel
24   arguments are often more appropriate on habeas corpus
     than on appeal. * * * However many of petitioner's
25   current contentions are based on issues found in the
     court record; and his fundamental legal arguments are
26   inconsistent with the holdings of the Court of Appeal.
     Furthermore, petitioner's own documentation does not
27   support his claim of prejudicial misconduct.  To the
     contrary, the objective evidence undermines his
28   allegations.

Lodged Document 6.  The Superior Court denied the petition for writ of habeas corpus; the California Court of Appeal and California Supreme Court subsequently summarily denied this claim.

This court has conducted an independent review of the record, and in addition to the facts noted by the state court on direct appeal, critical facts regarding this claim are detailed in the transcript for petitioner's motion for a new trial after his conviction.  Petitioner himself testified that his trial counsel gave him the jury instruction stating that the vandalism was a misdemeanor and that because of that, he did not take the plea bargain of six years.  RT at 1036.  Petitioner also testified, however, that there was "no secret I was looking at three strikes" and that he knew he was facing a 25 years to life prison sentence. RT at 1042-43.

At the same hearing, petitioner's trial counsel, Carrie McCreary, testified that she did not tell petitioner that he would be convicted of a misdemeanor and did not provide him with a copy of CAL-JIC 16.320.  RT at 1021-22.  McCreary stated she provided petitioner with case law regarding a special jury instruction regarding consent that she later provided the court.  RT at 1022.

McCreary also testified that she conveyed the offer of a six year sentence in exchange for a guilty plea to petitioner.  She stated that she did not advise petitioner not to take the offer but rather:

> explained to him a route that we could go if he did not
> want to accept the six years.  All along he told me that
> he did not want to accept any time for this crime, given
> the fact that the parties involved were mutually
> destroying property, and they owned property together.
> And I tried to explain to him that that was not a

defense, but that there was this case that said consent
could be a defense and that I would request a special
jury instruction.

RT at 1023.  McCreary also testified that she never told petitioner
the maximum sentence was one year or that the maximum conviction he
could receive was a misdemeanor; she did tell him that the case was
a three strikes case that could mean a sentence of 25 years to life
in prison.  RT at 1024.  In denying the motion for a new trial, the
trial court judge stated on the record that as to credibility, he
believed McCreary's testimony, and noted that even if McCreary had
given petitioner the incorrect jury instruction, petitioner had
stated that he did not discuss the jury instruction with her.  RT
at 1045, 1041.

        Petitioner cannot demonstrate that his attorney's conduct
constituted ineffective assistance of counsel.  To begin with,
petitioner can cite to no cases indicating that his attorney's
conduct fell below an objective standard of reasonableness.  See
Strickland, 466 US at 687-88.  Petitioner argues that his counsel
mistakenly told him that he could be convicted of a misdemeanor,
causing him to reject the plea deal.  The record, however, does not
support petitioner's allegations.  Petitioner's attorney denied
that she had given him the faulty instruction and, as the trial
court judge stated, even if she had, petitioner himself stated that
he did not discuss the instructions with her.  RT at 1045.
Moreover, petitioner himself testified that he knew his case was a
three strikes case, and that he was facing 25 years to life in
prison.  Given that petitioner stated he knew he was facing 25
years to life in prison, he cannot also claim that he believed he

was facing only a misdemeanor conviction and a sentence of less than six years.

Nor can petitioner demonstrate that the result of the proceedings would have been different absent counsel's alleged errors.  See Strickland, 466 US at 693-694.  Petitioner asserts that he would have taken the plea bargain of six years had he known he was not facing a misdemeanor conviction.  This assertion, however, is belied by petitioner's own testimony that he knew he was facing 25 years to life in prison if he were convicted. Moreover, McCreary testified that petitioner rejected the plea deal because he did not want to agree to any time in prison.  RT at 1023.  The trial court found that McCreary was more credible than petitioner, and the trial court's factual determinations are entitled to a presumption of correctness.  28 USC § 2254(e).  As such, and given that a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, petitioner's claim must be denied.  Strickland, 466 US at 688; Sanders, 21 F3d at 1456.


                    6: GROUND 4 (Instructions)

In Ground 4, petitioner also alleges that his counsel was ineffective for failing to request accomplice instructions, instructions on the measure of damages to property, and instructions on the criminal conduct of witnesses.  The California Court of Appeal addressed each part of this subclaim on a reasoned opinion on direct appeal.

\\

Wallace argues his attorney's failure to request

1
2
3
4
5
6
7
8
9
10
11

> instructions on the measure of damages for vandalism, on
> accomplices, and on past criminal conduct constitutes
> ineffective assistance of counsel.  With case law,
> statutory law, and instructions from the CALJIC and the
> Task Force alike all silent on the measures of damages,
> his attorney's failure to request instruction on that
> topic hardly fell below an objective standard of
> reasonableness. * * *  Assuming arguendo the court erred
> by not giving accomplice instructions sua sponte, his
> attorney's failure to request instruction on that topic
> did not prejudice him since a more favorable result was
> not reasonably probable even if the court had so
> instructed. * * * Likewise, assuming arguendo the court
> erred by failing to instruct on "[p]ast criminal conduct
> of a witness amounting to a misdemeanor," his attorney's
> failure to request instruction on that topic did not
> prejudice him since a more favorable result was not
> reasonably probable even if the court had so instructed.
> * * * On none of these theories does he meet his burden
> of showing ineffective assistance of counsel.
> (Strickland v Washington, supra, 466 US at pp 687-688;
> People v Ledesma, supra, 43 Cal 3d at pp 216-217.)

12

Opinion at 20-21.

13
14

        Petitioner cannot demonstrate that the California Court

15

of Appeal's reasoned decision was contrary to, or involved an

16

unreasonable application of, clearly established United States

17

Supreme Court law.  Nor can he demonstrate that the state court's

18

factual findings were unreasonable.  Petitioner can cite to no

19

cases indicating that his attorney's conduct fell below an

20

objective standard of reasonableness.  Strickland, 466 US at

21

687-88.  Nor can he cite to any cases indicating that, had his

22

counsel requested the various instructions, the result of the

23

proceeding would have different.  Strickland, 466 US at 693-94.

24

Accordingly, and given that a reviewing court must indulge a strong

25

presumption that counsel's conduct falls within the wide range of

26

reasonable professional assistance, petitioner's claim must be

27

denied.  Strickland, 466 US at 688; Sanders, 21 F3d at 1456.

28

\\

7: GROUND 12 (Alibi Defense)

In Claim 12, petitioner maintains that his counsel was ineffective because she did not prepare and present an alibi defense.  This claim was rejected by the state court in a summary opinion.

The court has conducted an independent review of the record and finds that the state court's summary dismissal of this claim was not objectively unreasonable under clearly established federal law.  See Delgado, 233 F3d at 982.  The record reveals that it was not objectively unreasonable for the state court to conclude that counsel's decision not to present an alibi defense was a reasonable tactical decision under the circumstances of the case.  Sanders, 21 F3d at 1456.

At trial, arresting officer Scott Payn testified that he took Pointer's statement that petitioner had damaged the premises.  He also testified that he observed the damage in the house at that time.  RT at 439-42.  Officer Payn later returned to the premises with three other officers.  RT at 443.  At that time, Officer Payn heard "lots of banging noises coming from inside the house" and observed petitioner through the front window.  RT at 443.  Payn observed petitioner throw something against the wall and tip something over inside the house.  RT at 444.  The officers continued to hear banging noises from inside the house, until Pointer arrived and gave the officers her keys to the house.  RT at 444-45.  The officers entered the home to arrest petitioner, and Officer Payn testified that "[t]here was a lot more damage" than there had been the first time he had visited the premises.  RT at 447.

Given Officer Payn's testimony regarding observation of petitioner and the damage to the home, and the undisputed fact that petitioner was arrested at the home where the vandalism occurred, counsel's decision not to present an alibi defense was a reasonable tactical decision. Petitioner may disagree, but a difference of opinion as to trial tactics does not constitute denial of effective assistance. Mayo, 646 F2d at 375.

Moreover, even if petitioner had been able to show that counsel's decision was unreasonable, he would not be able to demonstrate any prejudice. Any alibi defense presented would have been week in light of the evidence presented by the prosecution, and there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 US at 694. Accordingly, petitioner's claim must be denied.


8: GROUND 13 (Conflict of Interest)

In Ground 13, petitioner maintains that his rights were violated due to his attorney's alleged conflict of interest. In support of this claim, petitioner cites to, inter alia, counsel's limited visitation of petitioner, counsel's alleged defective defense, and counsel's alleged failure to investigate petitioner's alibi. This claim was rejected by the state court in a summary opinion.

In order to establish a violation of the Sixth Amendment, a petitioner "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." See Cuyler v Sullivan, 446 US 335, 348 (1980) (footnote omitted). An "actual

conflict" is not separate from an "adverse effect;" rather, it is defined as one which adversely affects the lawyer's performance. Earp v Ornoski, 431 F3d 1158, 1183 (9th Cir 2005).

An "actual conflict of interest" only occurs when counsel "actively represented conflicting interests." Strickland, 466 US at 692. A theoretical or potential conflict is insufficient to constitute actual conflict; instead counsel must have actively represented conflicting interests. Bragg v Galaza, 242 F3d 1082, 1087 (9th Cir), amended, 253 F3d 1150 (9th Cir 2001). The term "actual conflict" is not a synonym for "direct conflict." United States v Rodrigues, 347 F3d 818, 823-24 (9th Cir 2003). A petitioner must prove an actual conflict through a factual showing in the record. Bragg, 242 F3d at 1087; Morris, 966 F2d at 455.

The court has conducted an independent review of the record and finds that the state court's summary dismissal of this claim was not objectively unreasonable under clearly established federal law. Delgado, 233 F3d at 982. While petitioner recounts his counsel's alleged deficient performance, he does not allege that her representation of him was actually conflicted, i e that she "actively represented conflicting interests." Petitioner does not meet his burden of proving an actual conflict through a factual showing in the record. See Bragg, 242 F3d at 1087. Accordingly, his claim must be denied.

### 9: GROUND 19 (1987 Prior Conviction)

In Ground 19, petitioner maintains that his trial counsel was constitutionally ineffective when she allegedly failed to investigate petitioner's 1987 prior strike for assault with a

deadly weapon.  According to petitioner, his assault with a deadly weapon conviction should not have qualified as a strike because the conviction was pursuant to a plea bargain and was not a "serious or violent felony" under the applicable California law.  The state court dismissed this claim in a summary opinion.

The court has conducted an independent review of the record and finds that the state court's summary dismissal of petitioner's claim was not objectively unreasonable under clearly established federal law.  See Delgado, 233 F3d at 982.  Petitioner can cite to no cases indicating that his attorney's conduct fell below an objective standard of reasonableness.  See Strickland, 466 US at 687-88.  The fact that petitioner's conviction for assault with a deadly weapon was pursuant to a plea bargain has no impact as to whether it was a valid conviction, and petitioner cites to no caselaw indicating otherwise.  Moreover, assault with a deadly weapon was included by the California legislature as a "serious or violent felony" constituting a "strike" beginning in 2000, well before petitioner's 2002 conviction for vandalism or his 2003 sentencing.  See Cal Penal Code § 1192.7.  As such, there were no reasonable grounds for petitioner's trial counsel to further investigate this prior strike.

Even if petitioner's trial counsel had been ineffective when she allegedly failed to further investigate petitioner's conviction, petitioner is unable to demonstrate any prejudice as a result of her conduct.  Because the conviction was a valid strike, there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

\\

different."  Strickland, 466 US at 694.  Accordingly, petitioner's

claim must be denied.


## 10: GROUND 20 (Appellate Counsel)

In Ground 20, petitioner alleges that his appellate

counsel was constitutionally ineffective.  Specifically, he

maintains that it was prejudicial error for his appellate counsel

not to challenge petitioner's 1987 strike for assault with a deadly

weapon.  The state court dismissed this claim in a summary opinion.

The Due Process Clause of the Fourteenth Amendment

guarantees a criminal defendant the effective assistance of counsel

on his first appeal as of right.  See Evitts v Lucey, 469 US 387,

391-405 (1985).[9]  There is no constitutional right to an attorney

in any other state post-conviction proceedings.  See,

e g, Coleman v Thompson, 501 US 722, 755-57 (1991) (no right to

counsel on appeal from state habeas trial court judgment).  Claims

of ineffective assistance of appellate counsel are reviewed

according to the standard set out in Strickland v Washington, 466

US 668 (1984).  Miller v Keeney, 882 F2d 1428, 1433 (9th Cir 1989).

Appellate counsel does not have a constitutional duty to

raise every nonfrivolous issue requested by defendant.  See Jones v

Barnes, 463 US 745, 751-54 (1983); Miller, 882 F2d at 1434 n10.

The weeding out of weaker issues is widely recognized as one of the

---

[9] Although the right to the effective assistance of counsel at
trial is guaranteed to state criminal defendants by the Sixth
Amendment as applied to the states through the Fourteenth, see
Lucey, 469 US at 392, the Sixth Amendment does not address a
defendant's rights on appeal; the right to effective state
appellate counsel is derived purely from the Fourteenth
Amendment's due process guarantee, see id.

hallmarks of effective appellate advocacy.  See id at 1434.
Appellate counsel therefore will frequently remain above an
objective standard of competence and have caused his client no
prejudice for the same reason – because he declined to raise a weak
issue.  Id  Because appellate counsel is required to exercise
judgment in addressing issues on appeal, it is "difficult to
demonstrate that [appellate] counsel was incompetent under
Strickland for omitting a particular argument."  Smith v Robbins,
528 US 259, 288 (2000).

        The court has conducted an independent review of the
record and finds that the state court's summary dismissal of
petitioner's claim of ineffective assistance of appellate counsel
was not objectively unreasonable under clearly established federal
law.  See Delgado, 233 F3d at 982.  Under Smith, petitioner is
obligated to demonstrate that "a particular non-frivolous issue was
clearly stronger than issues that counsel did present."  528 US at
288.  As discussed supra with regards to claim 19, prior to
petitioner's vandalism conviction in 2002, assault with a deadly
weapon was defined in the relevant statutes as a serious felony.
Petitioner's assault conviction, therefore, was a valid "strike"
under California law at the time of his sentencing in 2003 and it
was not unreasonable for his counsel not to have raised this issue
on appeal.  Because the strike was valid, petitioner also cannot
demonstrate any prejudice based on his counsel's failure to raise
this argument.  Petitioner's claim must be denied.

\\

\\

\\

1          11: GROUND 21 (Diminished Capacity)

2          In Ground 21, petitioner contends that his trial counsel

3 was ineffective because she failed to investigate a defense of

4 diminished capacity.  Petitioner claims that his voluntary

5 ingestion of rock cocaine may have diminished his ability to form

6 the requisite criminal intent.  This claim was rejected by the

7 state court in a summary opinion.

8          Petitioner cannot demonstrate that the state court's

9 rejection of this claim was objectively unreasonable under clearly

10 established federal law.  As respondent confirms, under California

11 law, diminished capacity is not a defense to a general intent

12 crime.  People v Saille, 54 Cal 3d 1103, 1112 (1991).  "Evidence of

13 voluntary intoxication is not admissible to negate the capacity to

14 form any mental state, but is admissible 'solely on the issue of

15 whether or not the defendant actually formed a required specific

16 intent, premeditated, deliberated, or harbored malice aforethought,

17 when a specific intent crime is charged.'" Id (citing Cal Penal

18 Code § 22).  Petitioner's convictions were for vandalism and being

19 under the influence of a controlled substance, both general intent

20 crimes where voluntary intoxication is not a defense.  Id  Because

21 there was no defense of voluntary intoxication to the alleged

22 crimes, it was reasonable for petitioner's counsel not to raise

23 such a defense, and petitioner suffered no prejudice as the result.

24 Strickland, 466 US at 687-88.  This claim must be denied.

25

26                    L: GROUND 3

27          In Ground 3, petitioner maintains that he is entitled to

28 habeas relief based on the cumulative effect of the alleged state

1  court errors.  This claim was rejected by the California Supreme

2  Court in a summary opinion.

3          In some cases, although no single trial error is

4  sufficiently prejudicial to warrant reversal, the cumulative effect

5  of several errors may still prejudice a defendant so much that his

6  conviction must be overturned.  See, e g, <u>Alcala v Woodford</u>, 334

7  F3d 862, 893-95 (9th Cir 2003) (reversing conviction where multiple

8  constitutional errors hindered defendant's efforts to challenge

9  every important element of proof offered by prosecution).  However,

10  where there is no single constitutional error existing, nothing can

11  accumulate to the level of a constitutional violation.  <u>See Mancuso</u>

12  <u>v Olivarez</u>, 292 F3d 939, 957 (9th Cir 2002).

13          Here, petitioner has not demonstrated that there were

14  multiple constitutional errors such that his due process rights

15  were violated.  Petitioner may disagree with the decisions of the

16  state courts, but he has not shown that they were unreasonable

17  under clearly established federal law.  Accordingly, his claim of

18  cumulative error must be denied.

19

20                              V

21          For the reasons set forth above, the petition for a writ

22  of habeas corpus is DENIED.  The clerk shall enter judgment in

23  favor of respondent and close the file.

24

25          IT IS SO ORDERED.

26

27  _____

28  Vaughn R Walker
   United States District Chief Judge